**FILED**

JAN 28 2019

Clerk, U.S. Courts
District Of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

RONALD BROTHERS,

Plaintiff,

vs.

NICHOLAS MONACO; JARED
GUISINGER; SCOTT
BURLINGHAM; THORIN GEIST;
BILL LOWER; RAVALLI COUNTY;
AND DOES 1–10,

Defendants.

CV 18–142–M–DLC

ORDER

Before the Court is the motion to dismiss of Defendants Nicholas Monaco,

Jared Guisinger, Scott Burlingham, Thorin Geist, Bill Lower, and Ravalli County

(collectively referred to as the "County"). (Doc. 15.) The Court grants the motion

in part and denies it in part.

## BACKGROUND[1]

Plaintiff Ronald Brothers's romantic relationship with Jennifer Schultze

began in 2010 and lasted approximately six years. (Doc. 13 at 5.) It was rocky,

particularly near its end, and in March 2016, Brothers became suspicious that

Schultze was romantically involved with someone else. (*Id.*) While visiting

---

[1] Solely for purpose of resolving the County's motion to dismiss, the facts of the Amended
Complaint are construed as true.

1

Schultze in her apartment, Brothers unlocked her cell phone with a passcode she had previously shared with him, and he found what he perceived to be confirmation of his suspicions. (*Id.*) Brothers confronted Schultze, and both became "upset." (*Id.* at 6.)

Less than two weeks later, Brothers and Schultze got into a particularly nasty argument while in Schultze's vehicle. (*Id.*) The same day, March 15, 2016, Schultze lodged a complaint against Brothers with the Ravalli County Sheriff's Office, alleging that Brothers had unlawfully entered Schultze's apartment. (*Id.*) Ravalli County law enforcement officers Guisinger and Monaco interviewed Schultze. (*Id.*) Without further corroboration and without a warrant, Guisinger and Monaco arrested Brothers and booked him into the Ravalli County jail, where he stayed for over 24 hours. (*Id.* at 6–7.)

Brothers appeared in justice court the next day. (*Id.* at 7.) He was released on his own recognizance, but not before agreeing, as a condition of release, to give the passcode to his cell phone, which had been confiscated. (*Id.*) Officer Burlingham applied for and received a search warrant to search Brothers's phone, attesting in the application that Schultze "reported that she had searched her home and discovered she was missing a cell phone and that someone had been

2

rummaging through her personal property."[2] (*Id.*) Burlingham did not attempt to corroborate the information given by Schultze before applying for the warrant. (*Id.*) On March 17, 2016, Schultze sought an order of protection against Brothers, which was denied on the basis of insufficient evidence. (*Id.* at 8.)

On April 14, 2016, Brothers was charged with felony burglary and misdemeanor theft. (*Id.*) In July 2016, Schultze stated in a recorded interview with counsel[3] that she had found the missing cell phone—presumably, the basis for the theft charge—in her car. (*Id.*) Several months later, on November 1, 2016, an amended information against Brothers was filed, charging Brothers with felony burglary, misdemeanor stalking, and misdemeanor privacy in communications charges, but not with misdemeanor theft. (*Id.* at 9.) In the affidavit filed in support of the amended information, deputy county attorney Geist attested that Schultze's cell phone had been found in Brothers's vehicle. (*Id.*)

On January 5, 2017, in response to Brothers's motions to suppress and to dismiss charges, the Ravalli County district court found that there had been no probable cause to arrest Brothers and that his arrest was unlawful. (*Id.*) The

---

[2] It is unclear whether the phone was actually searched. *See infra* note 10.
[3] It is unclear who "counsel" are and whom they represented.

3

County was ordered to return Brothers's phone. The court dismissed the felony burglary[4] and misdemeanor privacy in communications charges and remanded to justice court for consideration of any misdemeanor charges. (*Id.* at 9–10.)

On January 17, 2017, county prosecutors Lower and Geist sought leave to file a second amended complaint charging Brothers with misdemeanor unlawful use of computer and felony burglary. (*Id.*) The court denied the motion, finding that the affidavit filed in support of the motion included "verbatim use of the concerning 'self-confirming, conclusory, and vague' allegations" that had been previously used to support the dismissed charges. (*Id.*)

On February 23, 2017, a complaint was filed in justice court, charging Brothers with misdemeanor stalking, misdemeanor criminal trespass to property, and misdemeanor unlawful use of a computer. (*Id.*) The affidavit filed in support of the complaint was nearly identical to those previously filed in and rejected by the district court. (*Id.* at 10–11.) In response to Brothers's motion to dismiss, the presiding justice of the peace dismissed the charges on August 10, 2017.

Through counsel, Brothers brought this lawsuit under 42 U.S.C. § 1983, alleging violation of his federal constitutional rights. Asserting supplemental

---

[4] Felony burglary requires unlawful entry and commission of (or purpose to commit) a separate crime. Mont. Code Ann. § 45–6–204. Thus, when the misdemeanor privacy in communication charge was dismissed, there was no longer any basis for the felony burglary charge.

4

jurisdiction, he also brought state law claims for: (1) negligence; (2) malicious prosecution; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) assault and battery; (6) false imprisonment; and (7) violations of his state constitutional rights.

## LEGAL STANDARD

A complaint must include a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It need not include "detailed factual allegations," but it must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Where, as here, the defendant tests the sufficiency of the complaint under Rule 12(b)(6), the Court must construe all factual allegations in favor of the plaintiff to determine whether the plausibility standard is met. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Generally, the analysis at this early stage of litigation focuses on the law rather than the truth of the factual allegations, as dismissal is appropriate only if the plaintiff has not presented a cognizable legal theory or alleged sufficient facts in support of that theory. *Balistreri v. Pac. Police*

*Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). However, the Court need not disregard all facts outside of the complaint, and it need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## DISCUSSION

The County raises, with varying degrees of success, a number of theories in support of its motion to dismiss the Amended Complaint in its entirety. At this early stage of litigation, dismissal is warranted as to: (1) claims against prosecutor Lower; (2) federal claims against Ravalli County; (3) state law claims brought against individual actors in their individual and official capacities; and (4) state law negligence claims against officers Guisinger, Monaco, and Burlingham. Although some of Brothers's remaining claims are on relatively thin ice, the remainder of his claims may proceed.

## I. Prosecutorial Immunity—claims against Lower and Geist

The County argues that prosecutorial immunity insulates deputy county attorneys Lower and Geist, as well as Ravalli County itself,[5] from Brothers's

---

[5] Although the County seeks dismissal of claims against Ravalli County within its prosecutorial immunity argument, it offers no independent grounds to dismiss the claims against Ravalli County. Of course, if the claims against the prosecutors are dismissed, there can be no vicarious liability—assuming that vicarious liability could otherwise be found. However, the allegations regarding the prosecutors' conduct could be relevant to other claims brought by Brothers against Ravalli County. As discussed below, Brothers's state law claims, but not his federal claims,

6

claims arising from the alleged wrongful prosecution of Brothers. (Docs. 15 at 10–
13, 19 at 2–5.) Federal prosecutorial immunity law applies to Brothers's § 1983
claims, and Montana prosecutorial immunity law applies to the remainder of
Brothers's claims, all of which are brought under state law. *See generally Cousins
v. Lockyear*, 568 F.3d 1063 (9th Cir. 2009) (analyzing federal and state claims
separately under federal and state immunity law). Here, the protections offered
under federal and state law are coextensive. *See, e.g.*, *Renenger*, 426 P.3d at 564–
67 (citing, without distinguishing, federal and state law to analyze, without
distinguishing, prosecutorial immunity as to both federal and state claims).

Brothers concedes that prosecutorial immunity bars all actions based in the
performance of functions "intimately associated with the judicial phase of the
criminal process." *Imbler v. Pactman*, 424 U.S. 409, 430 (1976). However, he
argues that his allegations do not fall under *Imbler* because Lower and Geist acted
as witnesses rather than prosecutors when they submitted affidavits supporting the
charges brought against Brothers. Because the County raises no other arguments
in support of its motion to dismiss these claims,[6] the Court addresses whether

---

against Ravalli County survive. In the absence of any argument regarding the application of
prosecutorial immunity to a government entity, the Court does not address the issue.
[6] The County does not argue that Brothers did not otherwise fail to state a claim against Lower
and Geist, and so the Court does not address whether the allegations in the Complaint may
satisfy a claim under federal and/or state law.

Lower and Geist acted in their roles as prosecutors at all times relevant to Brothers's claims. *See Kalina v. Fletcher*, 522 U.S. 118, 126 (1997); *accord Renenger*, 426 P.3d at 564–65.

Prosecutorial immunity, unlike the qualified immunity enjoyed by other state actors under § 1983 law, is absolute. *Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015). "[T]he absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special 'esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" *Kalina*, 522 U.S. at 127 (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1985)). The focus is on "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988). Where, for example, a prosecutor performs a function traditionally performed by a law enforcement officer rather than a prosecutor, she is not entitled to qualified immunity. *Kalina*, 522 U.S. at 127; *Mitchell v. Forsyth*, 472 U.S. 511, 520–24 (1985).

Brothers alleges that false information was set forth in the affidavits used to support the charges brought by the County—specifically, the assertion that Schultze's iPhone had been found in Brothers's vehicle. Whether Brothers may

8

bring suit against Lower and Geist based on that false information depends on how Lower and Geist presented the information to the court.

Absolute prosecutorial immunity does not protect a prosecutor from suit when the prosecutor "act[s] as a complaining witness rather than a lawyer" by "personally attesting to the truth of . . . averments" in a document submitted in support of charging documents. *Kalina*, 522 U.S. at 129. In *Kalina*, prosecutorial immunity shielded the defendant-prosecutor from suit for "her drafting of [a] certification"—even though she could be sued for certifying the truth of the allegations made in that certification—as well as "her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court." *Id.* at 130. The Court noted that its holding depended largely on a procedural quirk in the charging jurisdiction, where prosecutors routinely swore to the truth of the facts asserted in support of charging documents. *Id.* at 131.

This Court has since applied *Kalina* to determine that a prosecutor is absolutely immune from suit when she certifies that she has found probable cause based on facts which are summarized but not themselves personally certified. *Fratzke v. Sanders Cty.*, 2015 WL 4964200, at *5 (D. Mont. Aug. 19, 2015). In *Fratzke*, the prosecutor

list[ed] the information provided to her that she believes supports a probable cause finding—at no point [did] she personally attest to the truth of the information provided, but instead indicate[d] that, taken as true, the information constitute[d] probable cause to file the charging document. [The prosecutor] did not offer the probable cause evidence in the motion based on personal knowledge, but based upon information provided to her by others, which she is entitled to do. She did not act as a complaining witness, but instead performed a function which the *Kalina* Court noted would continue to receive absolute immunity protection—she received, selected, and presented externally-gathered information which she believed provided probable cause to charge the [plaintiffs].

*Id.* at *5.

The County contends that this case follows the pattern of *Fratzke*, as "neither Lower nor Geist were personally attesting to the truth of the matters set forth in the affidavits. Rather, the affidavits state that the investigation conducted by Ravalli County law enforcement established certain matters." (Doc. 19 at 4.) Under the County's interpretation, a prosecutor is always immune from suit if the prosecutor attributes the facts in a certification to law enforcement's investigation.

The Court disagrees. A prosecutor submitting a probable cause affidavit summarizing investigative findings certifies that the findings set forth in the affidavit are consistent with the findings presented to the prosecutor. She is a material fact witness regarding how the investigation was presented to her, but she is not a material fact witness as to what the underlying investigation actually revealed. Thus, if a prosecutor's affidavit includes a falsehood, it matters whether

10

that falsehood is attributable to law enforcement's misstatement of its own investigation or rather to the prosecutor's misstatement of the investigation as it was presented to her.

Ultimately, the facts of this case fall somewhere between *Kalina* and *Fratzke*. Although the issue is close, the Court finds that Brothers may pursue claims against Geist but not Lower. That said, the claims are on shaky ground, and, although they survive this motion to dismiss, their continued survival is uncertain.

Geist submitted an affidavit in support of the State's motion for leave to file an amended information substituting a misdemeanor privacy in communications charge for the misdemeanor theft charge included in the first information. In his affidavit, Geist certified that he "ha[d] reviewed an investigation conducted by the Ravalli County Sheriff's Office." (Doc. 15-1.) He went on to summarize the investigation. Couched within that summary was the line, "[t]he Iphone was later recovered in the Defendant's vehicle." (*Id.*)

Brothers alleges that Geist's affidavit was submitted months after Schultze stated in a recorded interview with counsel that she had found the missing cell phone in her car. (Doc. 13 at 8.) Geist is entitled to absolute prosecutorial immunity if he had no reason to know that his affidavit included false information,

11

as he is entitled to rely on the Sheriff's Office's investigation. However, if he knew that the affidavit he submitted was inconsistent with the investigation, then Brothers may have a claim that his injuries arose from Geist's conduct as a material witness. The Court determines that Brothers has plausibly alleged that Geist did, in fact, insert a falsehood into his affidavit and that Brothers may proceed with his claims arising from that alleged fact.

The issue is more straightforward as to Lower. Like Geist, Lower submitted an affidavit for probable cause, certifying that "[a]n investigation conducted by Ravalli County law enforcement has established" certain facts, summarized in the affidavit.[7] (Doc. 15-2.) However, Brothers has not alleged that Lower's affidavit included a fact known to be false to Lower at the time of certification. Indeed, the affidavit submitted before the justice court corrects the error in Geist's earlier submission; Lower correctly certifies that the investigation revealed that "[t]he Iphone was later recovered in Schulze's vehicle." (Doc. 15-2.)

As Brothers alleges and as the state district court found, it is likely true that Lower should have known that there was no probable cause to pursue additional

---

[7] The Court has reviewed Geist's affidavit submitted to support the State's first motion for leave to file an amended information, filed on November 1, 2016, and Lower's affidavit submitted to support misdemeanor charges in justice court, filed on February 23, 2017. It has not seen the affidavit submitted to support the State's second motion for leave to file an amended information, filed on January 17, 2017, and so it is unaware of: (1) who filed the January 17 affidavit; and (2) whether that affidavit included a fact that the affiant plausibly knew to be false.

12

charges against Brothers because the affidavit includes "self-confirming, conclusory, and vague" allegations previously rejected by the court. (Doc. 18-2.) But this allegation relates directly to Lower's performance of his duties as a prosecutor, and Lower is entitled to absolute prosecutorial immunity for his probable cause findings and for his attempt to pursue charges against Brothers. *Kalina*, 522 U.S. at 130. Brothers has not alleged any claims arising from Lower's conduct as a material witness, and Lower is immune from this suit.

Although Brothers's claims against Geist survive the County's motion to dismiss, the Court notes that Brothers may pursue claims against Geist only to the degree that these claims arise from the prosecutor's knowing certification of false investigative findings. He may not pursue claims arising from Geist's: (1) reliance on false information; (2) probable cause certification; or (3) decision to pursue charges against Brothers in reliance on information not known to be false.

## II.  Qualified Immunity—federal claims against Monaco, Guisinger, and Burlingham

The County argues that Ravalli County law enforcement officers Monaco, Guisinger, and Burlingham are entitled to qualified immunity from Brothers's federal claims. Like prosecutorial immunity, qualified immunity is an immunity from suit, not simply liability. *Mitchell*, 472 U.S. at 526. Thus, it should be

13

decided "at the earliest possible state in litigation." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam).

Qualified immunity insulates public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341. Under § 1983, a law enforcement officer is entitled to qualified immunity unless: (1) the officer violated a constitutional right; and (2) that constitutional right was clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232, 236–39. "The linchpin of qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1075 (9th Cir. 2011) (per curium).

### A. Guisinger and Monaco

Brothers alleges that Guisinger and Monaco had neither a warrant nor an exception to the warrant requirement for Brothers's arrest. The County argues that Guisinger and Monaco are entitled to qualified immunity because: (1) they had no affirmative duty to corroborate Schulze's reports prior to effectuating Brothers's

14

arrest; and (2) they had probable cause to arrest Schulze and reasonably believed

that immediate arrest was necessary.

There appears to be some confusion between the parties regarding the

standard to be applied. Brothers argues that "exigent circumstances" did not exist

for his warrantless arrest, but he did not allege facts supporting a requirement of

exigent circumstances—i.e., that he was arrested in his home. *See, e.g.*, *Payton v.

New York*, 445 U.S. 573, 590–98 (1980). For its part, the County relies on a state

statute to outline the probable cause requirement, and it also argues that Montana

law does not impose upon police officers a duty to investigate. These arguments

are wholly irrelevant to the issue of qualified immunity, which is an issue of

federal law.

Brothers's initial charges included two felony charges. "[A]lthough a

warrant presumptively is required for a felony arrest in a suspect's home, the

Fourth Amendment permits warrantless arrests in public places where an officer

has probable cause to believe that a felony has occurred." *Florida v. White*, 526

U.S. 559, 565 (1999). Thus, Brothers had a clearly established Fourth Amendment

right to remain free from arrest unsupported by probable cause. However, contrary

to Brothers's arguments, the officers do not need to show that they had an

exception to the warrant requirement. The issue, then, is "whether reasonable

officers could disagree as to the legality of the arrest"—that is, the existence of probable cause—"such that the arresting officer[s] [are] entitled to qualified immunity." *Rosenbaum*, 663 F.3d at 1076 (9th Cir. 2011).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Instead, the test looks to the "totality of circumstances." *Id.* at 230. "Probable cause requires 'a probability or substantial chance of criminal activity.'" *Merriman v. Walton*, 856 F.2d 1333, 1335 (9th Cir. 1988), quoting *Gates*, 462 U.S. at 243. Where, as here, an officer's probable cause finding is based on information given to the officer by a private citizen, the "informant's veracity, reliability and basis of knowledge are all highly relevant," but they are not "entirely separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230 (internal quotation marks omitted).

Construing the allegations of the Complaint as true, officers Guisinger and Monaco arrested Brothers solely based on information provided by Schultze, much of which later turned out to be false. Of course, it is irrelevant that the information was later disproved; the focus must be on whether a reasonable officer could have

found probable cause at the time of Brothers's arrest. *Rosenbaum*, 663 F.3d at 1076.

At this stage of litigation, the Court lacks the information it would need to conclude that Guisinger and Monaco are entitled to qualified immunity as a matter of law. The Court has not seen police reports prepared by Guisinger and Monaco or any other materials regarding their interview of Schultze. It is wholly unclear whether they could have reasonably found the information she provided reliable. Indeed, it is unclear what, exactly, that information was. Accordingly, the Court will not dismiss Brothers's claims against Guisinger and Monaco at this time, but it notes that qualified immunity may prove available to the officers as the facts of this case are further developed.

### B. Burlingham

Brothers alleges that Burlingham "maliciously engaged in outrageous conduct" when he submitted an affidavit in support of his application for a search warrant to search Brothers's cell phone. (Doc. 13 at 18.) Brothers does not, however, allege that Burlingham or any other officer did, in fact, search the phone, and he does not appear to request damages stemming directly from such a search but only from the application for the search warrant.[8]

---

[8] In his Complaint, Brothers asserts that he "provided the passcodes [to unlock his phone] in open court." (Doc. 13 at 7.) However, the state district court wrote that Brothers refused to

17

The issue is whether a "reasonably well-trained officer" would have known that his affidavit in support of a search warrant "failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345. "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, . . . will the shield of immunity be lost." *Id.* at 344–45.

Brothers argues that "a reasonably well-trained officer would not have submitted an application for a search warrant without first further determining the reliability of the information supplied by Ms. Schultze." (Doc. 18 at 11.) The Court disagrees with Brothers's reading of the law—there is no absolute legal requirement that Burlingham verify Schultze's information with additional, more objective data. And such a requirement would unreasonably hamstring law enforcement's ability to investigate and respond to any number of potentially serious situations, including, for example, reports of domestic or sexual violence. Nonetheless, the Court finds that dismissal of Brothers's claims against Burlingham on qualified immunity grounds would be premature. Without the benefit of further factual development, it is unclear what, exactly, Burlingham knew about the information provided by Schultze.

share his passcode. (Doc. 18-1 at 6.) In any event, the County does not seek dismissal on the ground that Brothers was not injured, and the Court accordingly does not address the issue.

## C. The Filing of Criminal Charges

The County further argues that the officers cannot be held liable because the "prosecutor's independent judgment [broke] the chain of causation between the alleged unconstitutional acts of other officials and the damages allegedly incurred by a plaintiff." (Doc. 15 at 19.) "[I]n any constitutional tort case, including Fourth Amendment-based cases, it is necessary, if not sufficient, that a plaintiff seeking to sue non-prosecutorial officials alleged to be responsible post-complaint for the arrest or prosecution show the absence of probable cause." *Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008). As discussed above, Brothers has plausibly alleged that he was arrested without probable cause.

Whether Brothers must show more to pursue his claims against the officers is legally uncertain. It is undecided whether a § 1983 plaintiff must also rebut a presumption that the prosecutor exercised independent judgment to find probable cause, "thereby breaking the chain of causation between an arrest and prosecution and immunizing investigating officers from damages suffered after the complaint was filed," as the County argues. *Id.* at 862 (internal quotation marks and ellipses omitted); *compare Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981) (holding that rebuttable presumption of prosecutorial independence applies to insulate law enforcement officers from liability), *with Hartman v. Moore*, 547 U.S. 250 (2006)

19

(rejecting such an analysis as to a *Bivens* or § 1983 claim alleging First Amendment violations).

However, the Court need not determine, at this state of litigation and without full briefing on the issue, the appropriate standard. Assuming that the presumption of prosecutorial independence applies, the Court finds that Brothers has plausibly alleged facts rebutting the presumption. The County, in advocating for prosecutorial immunity, argues that the Geist and Lower "had no information available to [them] other than that" given to them by law enforcement. *Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988). And, as discussed above, it is unclear whether Geist or law enforcement may ultimately be responsible for the false statement that Schultze's iPhone was found in Brothers's vehicle. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 483–84 (9th Cir. 2007) (reversing grant of summary judgment for law enforcement officers when plaintiff offered "more than conclusory allegations of falsehood" in the officers' reports); *Newman v. Cty. of Orange*, 457 F.3d 991, 995 (9th Cir. 2006) (noting that the chain of causation is unbroken where officers "omit[] relevant information" or "includ[e] false information").

Brothers's claims against law enforcement officers Guisinger, Monaco, and Burlingham survive the County's motion to dismiss. That said, further factual development may show that the officers are in fact entitled to qualified immunity.

### III. County Liability under § 1983

A governmental entity, such as Ravalli County, "cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, it "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the county's] officers." *Id.* at 690.

Brothers has not plausibly alleged facts giving rise to potential *Monell* liability. Rather, in the Complaint, he cursorily asserts that the individual prosecutors and officers "acted under color of law, statutes, ordinances, rules, regulations, customs, policies, practices and/or usages of Ravalli County." (Doc. 13 at 11.) He alleges no specific facts regarding what those policies and practices are. Instead, he essentially recites the legal requirements for a *Monell* claim and states that they are met, alleging:

> The policies customs, and practices implicitly or explicitly adopted by Defendant Ravalli County regarding training, supervision, and

21

discipline amounted to deliberate indifference to and conscious disregard of Ron's constitutional rights and ratification of violation of those rights. These policies, customs, and practices include, but are not limited to, the following:

> Failing to adequately train, supervise, and control officers in proper communications with members of the public;

> Failing to adequately train, supervise, and control officers in determination of probable cause and investigation of alleged criminal conduct;

> Failing to set up systems to prevent abuse by officers, including the failure to properly track and investigate uses of force and the filing of abusive felony charges;

> Failing to discipline officers involved in abusing their authority; and

> Condoning and encouraging officers in the belief that they can violate the rights of persons such as Ron with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

(Doc. 13 at 12–14.)

Assuming without deciding that these statements, if true, may give rise to a finding of *Monell* liability, the Court simply cannot find the allegations of the Complaint adequate to survive a motion to dismiss the § 1983 claims brought against the County. Brothers did not "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. Indeed, he did not plead any "factual content" regarding Ravalli County at all.

## IV.    State Law Immunity as to Individual and Official Capacity Claims

The parties agree that Ravalli County, rather than Ravalli County's employees, bears liability for Brothers's state law claims. Accordingly, the Court grants the motion to dismiss all state law claims against the prosecutors and law enforcement officers themselves, whether they were sued in their individual or official capacity. Of course, Brothers may prosecute these claims—to the extent they survive—against the County.

## V.    State Constitutional Claims

The County also seeks dismissal of Brothers's claims brought under the Montana Constitution, arguing that "[a] party cannot pursue claims under the state constitution where there are adequate remedies under statutory or common law." (Doc. 15 at 25.) While it is true that Montana "generally avoid[s] addressing constitutional issues if a defendant's alleged harm can be remedied through a non-constitutional basis," dismissal on these grounds is, at minimum, premature. *N. Cheyenne Tribe v. Roman Catholic Church ex rel. Dioceses of Great Falls/Billings*, 396 P.3d 450, 460 (Mont. 2013).

It is not uncommon to plead various causes of action in the alternative,

knowing that the facts may ultimately support only one of the causes of action.

The fact that one or more of those causes of action arises under the Montana

constitution does not render this practice improper. *Dorwart v. Caraway*, 58 P.3d

128 (Mont. 2002), is instructive. There, the Montana Supreme Court addressed a

constitutional claim arising from an unlawful search and seizure of the plaintiff's

property. The defendants were entitled to qualified immunity as to the plaintiff's

federal claims brought under § 1983, and the plaintiff's common-law trespass and

conversion claims were properly dismissed on summary judgment. *Id.* at 131–33.

However, the plaintiff's constitutional claims—for violation of his state

constitutional rights to due process, privacy, and to be free from unreasonable

searches and seizures—survived summary judgment. *Id.* at 133–37.

The two cases cited by the County are not to the contrary. *N. Cheyenne

Tribe*, 396 P.3d 450; *Sunburst Sch. Dist. No. 2. v. Texaco, Inc.*, 165 P.3d 1079,

1093 (Mont. 2007). Both cases involve a reluctance to address novel constitutional

questions, rather than a hard-and-fast rule disallowing constitutional claims arising

from facts that may possibly give rise to a viable statutory or common-law claim.

*N. Cheyenne Tribe*, 296 P.3d at 460 ("We decline to address the District Court's

dismissal of [the tribe's] constitutional claims under these circumstances.");

*Sunburst Sch. Dist. No. 2*, 165 P.3d at 1093 ("We deem it possible . . . to resolve this case without resorting to determining [an unresolved constitutional issue].").

Brothers's state constitutional claims may ultimately be unsuccessful. However, they survive the County's motion to dismiss.

## VI. Public Duty Doctrine

Finally, the County argues that the public duty doctrine bars Brothers's common-law negligence claims against officers Guisinger, Monaco, and Burlingham. Brothers contends that the public duty doctrine does not apply where, as here, the plaintiff "alleges that the affirmative acts of the defendant harmed the plaintiff while the defendant was engaged in law-enforcement activities." (Doc. 18 at 14.)

There is considerable tension in Montana law on this issue, and both parties find support in recent cases. If the Court were to look only to the general formulation of the public duty doctrine, discussed at length in *Bassett v. Lamantia*, 417 P.3d 299 (Mont. 2019), it would allow Brothers's claims to proceed. Under Montana law, "[t]he public-duty doctrine recognizes that, because [law enforcement officers'] duty to protect is owed to the public generally, an officer does not have a legal duty to protect each individual plaintiff absent a special relationship." *Id.* at 310–11. "However, independent of the duty to protect and

based on generally applicable principles of negligence, an officer may owe a legal duty to a person injured directly by the officer's affirmative actions." *Id.* at 311. In *Bassett*, the Court summarized its earlier decisions involving the public duty doctrine as addressing claims that "officers allegedly breached a duty to protect the victim from outside or third-party harm." *Id.* at 317. The doctrine simply shields officers from lawsuits stemming from an alleged failure to perform law enforcement duties. Here, it appears at first look that Brothers has alleged injury "directly by the officer[s'] affirmative actions," falling outside the scope of the public duty doctrine as described in *Bassett*. *Id.* at 311.

However, after deciding *Bassett*, the Montana Supreme Court, sitting en banc, applied the public duty doctrine to shield officers from liability in circumstances directly analogous to those presented here. *Renenger*, 426 P.3d 559. The Court wrote that officers' "choice to pass along [uncorroborated investigative findings] is exactly the type of discretionary decision to which the public duty doctrine was intended to apply." *Id.* at 568. Although *Bassett* does not formulate the doctrine as coextensive with a law enforcement officer's regular duties, *Renenger* does: "The process of investigating and passing along evidence to a prosecutor, or county attorney, is a regular function [law enforcement] personnel do as part of their mandate to protect and secure the general public welfare." *Id.*

Because *Renenger* is both more recent and more closely on-point, the Court finds that the public duty doctrine applies to bar Brothers's negligence claims against officers Monaco, Guisinger, and Burlingham. Under *Renenger*, because investigation is a core law enforcement function, a duty owed to an individual under investigation is apparently subsumed under the broader duty to the general public. *Id.* No principle distinguishes the facts presented here from those discussed in *Renenger*. Thus, the Court finds that the public duty doctrine insulates officers Monaco, Guisinger, and Burlingham from Brothers's negligence claims.

Accordingly, IT IS ORDERED:

(1) The County Defendants' Motion to Dismiss filed on September 10, 2018, prior to the filing of the Amended Complaint (Doc. 9) is DENIED AS MOOT;

(2) The County Defendants' Motion to Dismiss filed on October 15, 2018 (Doc. 14) is GRANTED IN PART and DENIED IN PART;

(3) The Defendants' Motion to Dismiss is GRANTED as to Defendant Lower;

(4) The Defendants' Motion to Dismiss is GRANTED as to the Plaintiff's federal claims against Ravalli County;

(5) The Defendants' Motion to Dismiss is GRANTED as to the Plaintiff's state law claims brought against individual actors in their individual and official capacities;

(6) The Defendants' Motion to Dismiss is GRANTED as to the Plaintiff's negligence claims against officers Guisinger, Monaco, and Burlingham; and

(7) The Defendants' Motion to Dismiss is otherwise DENIED.

DATED this 28th day of January, 2019.

Dana L. Christensen, Chief Judge
United States District Court